UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Julius Blackman,

                              Plaintiff,

v.

Nancy A. Berryhill, Acting Commissioner
of Social Security,

                              Defendant.

**Decision and Order**

1:16-CV-00869-HBS

(Consent)

## I.    Introduction

This action is brought pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) to review the final determination of defendant, Commissioner of Social Security, that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits ("DIB") and/or Supplemental Security Income Benefits ("SSI"). Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties filed cross-motions for judgment on the pleadings. Dkt. Nos. 12, 16. For the reasons set forth in this opinion, defendant's motion is DENIED and plaintiff's motion is GRANTED[1] in part.

## II.    Background

### A.    Procedural Background

Plaintiff Julius Blackman protectively filed applications with the Social Security Administration ("SSA") for DIB and SSI on March 4, 2013. Tr. 17. He alleged a period of disability beginning March 3, 2012. *Id*. On July 12, 2013, plaintiff's applications were denied. *Id*. Plaintiff subsequently filed a request for a hearing with an administrative law judge ("ALJ") to

---

[1] The parties consented to Rule 73 jurisdiction on June 15, 2018. Dkt. No. 18.

review the denial of his application. This hearing was held on January 22, 2015. *Id*. On March 21, 2015, the ALJ issued an unfavorable decision, finding plaintiff not disabled. Tr. 28. Plaintiff then filed a request for review from the Appeals Council; however, this request was denied. Tr. 2.

Having exhausted the administrative appeals process, plaintiff filed a complaint with this Court on November 1, 2016. Dkt. No. 1. He alleges that the ALJ's March 21, 2015 decision was not supported by substantial evidence, warranting judgment in his favor or, alternatively, remand for further administrative proceedings. *Id*.

**B.     Factual Background**

Plaintiff was born on November 23, 1963, aged forty-nine years at the time of disability application. Tr. 77. He testified to completing twelfth grade. Tr. 47. His past work experiences included dietary aide, dishwasher, and maintenance worker. Tr. 54. The ALJ determined that plaintiff's severe impairments were osteoarthritis of the hips and depression. Tr. 19.

1.     Administrative Hearing

Plaintiff attended a hearing with the ALJ on January 22, 2015. Tr. 43. Prior to plaintiff's swearing in, plaintiff's attorney spoke to the ALJ about her difficulty in obtaining records from Horizon Health Services. Tr. 45–46. The ALJ told plaintiff's attorney that she had 21 days to obtain these records, to which plaintiff's attorney replied "[t]hank you." Tr. 46. Four days after the hearing, plaintiff's attorney submitted sixty-eight additional pages of records from Horizon into the record. Tr. 519–86. During the hearing, the ALJ questioned plaintiff about his impairments and daily activities, including his usage of a cane. Tr. 59. Plaintiff testified that his cane was given to him by his orthopedic doctor at Buffalo General[2]. *Id*.

---

[2] This doctor was Dr. Nenno. The importance of Dr. Nenno to this case will be discussed below.

2. Administrative Record

Plaintiff sought mental health treatment at Horizon Health Services. Tr. 233–49, 316–22, 519–86. The majority of the records from Horizon were submitted four days after plaintiff's administrative hearing. Tr. 519–86. These records contain an overview of plaintiff's progress in mental health treatment, and include several types of documents: individual progress notes, Tr. 566, 568, 577; service notes, Tr. 552, 565, 575; treatment summaries, Tr. 555, 535, 539, 556; and depression screening tests. Tr. 545, 548.

Plaintiff received primary care treatment at North Buffalo Medical Park. Tr. 331–518. On April 23, 2013, plaintiff was given a referral for an orthopedic doctor named "Dr. Nenno." Tr. 365. On July 9, 2013, it was reported that plaintiff was examined by Dr. Nenno, who had ordered an MRI of plaintiff's hip. Tr. 374. Dr. Nenno administered steroid shots and requested that plaintiff be prescribed a muscle relaxer. Tr. 390, 410. Throughout the remainder of the primary care treatment notes, plaintiff's care providers note that plaintiff follows up with Dr. Nenno. Tr. 371, 451, 455, 460. On October 20, 2014, primary care treatment notes reveal that plaintiff discussed hip surgery with Dr. Nenno. Tr. 502.

On April 10, 2013, plaintiff filled out a Function Report form supplied by the SSA. Tr. 178–88. Plaintiff noted on this form that he receives treatment for pain from "doc Nenno." Tr. 186. He also noted that Dr. Nenno evaluated his pain using "special tests," and that he would see Dr. Nenno on May 2 for further evaluation. *Id*.

3. ALJ's Decision

On March 21, 2015, the ALJ issued an unfavorable decision concerning plaintiff's claim for disability. Tr. 28. The ALJ concluded that, while plaintiff had severe impairments, he was still capable of performing light work with several exertional limitations. Tr. 24. Furthermore,

3

while he could no longer perform any past relevant work, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Tr. 27. Therefore, the ALJ found plaintiff not disabled. Tr. 28. The ALJ made no mention of having obtained, reviewed, or considered any records from Dr. Nenno.

### III. Discussion

The sole issue to be reviewed by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) ("[substantial evidence] is less than a preponderance of the evidence but more than a mere scintilla"). The ALJ's disability determination must be upheld by this Court even if "substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

#### A. Duty to Develop the Record

It is well-established Second Circuit law that "'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty is a threshold requirement for the SSA; the ALJ must develop the record prior to assessing whether a claimant

is disabled. 20 C.F.R. § 404.1512(b)(1) ("[b]efore we make a determination that you are not disabled, we will develop your complete medical history"). The ALJ must fulfill this duty "even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). In order to discharge the duty, the ALJ should "make every reasonable effort to help [the claimant] get medical evidence from [his] own medical sources and entities that maintain [his] medical sources' evidence . . . ." 20 C.F.R. § 404.1512(b)(1).

The ALJ's duty, however, is not unlimited. Ultimately, it is the claimant's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. § 404.1512(a)(1). In adhering to this responsibility, the claimant must "inform [the Administration] about or submit all evidence known to [him] that relates to whether or not [he is] blind or disabled." *Id*. Furthermore, if there are no "obvious gaps" in the administrative record, the ALJ "is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999). With this context in mind, two issues arise when the duty to develop the record is challenged: (1) whether there was an "obvious gap" in the record that should have prompted the ALJ to seek additional information, *Rosa*, 168 F.3d at 79 n. 5; and (2) whether the ALJ fulfilled his duty by making "every reasonable effort" to fill that gap. 20 C.F.R. § 404.1512(b)(1).

**B.     Plaintiff's Arguments**

Plaintiff asserts that there are two alleged gaps in the administrative record that should have prompted the ALJ to seek additional information. Dkt. No. 12-1, at 15–20. He first argues that the mental health records from Horizon Health Services are incomplete, which constitutes a gap. *Id.* at 15. Second, he argues that the lack of treatment records from his orthopedic doctor,

Dr. Nenno, constitutes another gap. *Id.* at 17. This Court will individually address the two alleged problems with the record highlighted by plaintiff.

1. Records from Horizon Health Services

Plaintiff alleges that the mental health records from Horizon Health Services are incomplete. Furthermore, he claims that the ALJ did not attempt to collect these records despite the fact that he knew they were incomplete. Dkt. No. 12-1, at 15. Thus, the ALJ failed to fulfill his duty to develop the record, warranting remand.

The assertion that the ALJ "did not attempt to collect" the records from Horizon is inaccurate. Plaintiff's attorney first alerted the ALJ of the incomplete records during the following exchange in the administrative hearing:

> ALJ: I'll admit all of those exhibits. Is there any other medical evidence in existence that's not in the record?
>
> ATTY: Yes. Actually, we're going to work with Mr. Blackman because he is still working with Horizon Health Services and he completed the chemical dependency program with them that was, again, the summary in 9F. He's continued working with them for mental health treatment, but the only updated records they sent in 9F were clearly, they were just a summary.

Tr. 45. Shortly after, the matter was put to rest by the following exchange:

> ALJ: Well, I'll give you 21 days to get [the records].
>
> ATTY: Thank you.

Tr. 46. The ALJ was aware that records from Horizon were still pending, and relied on plaintiff's attorney to deliver these records. Plaintiff's attorney indeed delivered, submitting sixty-eight additional pages of records from Horizon (labeled as Exhibit 12F) on January 26, 2015, four days after the administrative hearing. *See* Tr. 43, 519. However, plaintiff now contends that the record was still incomplete despite this submission because Exhibit 12F only contained three

6

individual counseling notes; additionally, the ALJ should have known the record was still incomplete because he was informed that Horizon was "completely uncooperative" in sending individual treatment notes. Dkt. No. 12-1, at 15–16.

The Court disagrees. It is true that, before the submission of Exhibit 12F, there was an "obvious gap" in the records from Horizon. Other than Exhibit 12F, the only records from Horizon are located in Exhibits 3F and 9F. Tr. 233–49, 316–22. These records contain a cumulative twenty-four pages, and the latest date referenced is May 30, 2013. Plaintiff's attorney testified at his hearing on January 22, 2015 that plaintiff was still "working with" Horizon, indicating that nearly two years of records were missing. Tr. 45. However, the January 26, 2015 submission of Exhibit 12F provided records from April 2013–January 2015, which filled the temporal gap in the record. Tr. 519–86.

Still, the issue remains as to whether the record is incomplete because Exhibit 12F only contains three individual progress notes. Dkt No. 12-1, at 16. Plaintiff cites a case, *Martin v. Colvin*, No. 1:15-CV-01067 (MAT), 2017 WL 370809 (W.D.N.Y. Jan. 26, 2017), in support of his proposition. In that case, a *pro se* claimant submitted mental health treatment records in preparation for his administrative hearing. *Id.* at *2. These records contained treatment notes from a social worker which frequently referred to appointments between the claimant and a psychiatrist. *Id*. However, no treatment records from the psychiatrist were present in the record. *Id*. at *3. The District Court remanded the case, instructing the ALJ to complete the record by obtaining the psychiatrist's treatment notes. *Id*. The Court further reasoned that, given that the claimant was unrepresented by counsel and mentally impaired, the ALJ's duty to develop the record was heightened. *Id*.

The principal flaw in plaintiff's comparison to *Martin* is that he has mischaracterized the nature of the records submitted in Exhibit 12F. Unlike the treatment notes in *Martin v. Colvin*, the treatment notes in this case do not contain references to another treating physician's examinations that are totally absent from the administrative record. While there are only three records labeled individual progress notes, Tr. 566, 568, 577, there are also records labeled "MD/NP/RN Service Note" that appear to serve the same function as a progress note. *See* Tr. 552, 565, 575. Furthermore, the summaries provide a comprehensive overview of plaintiff's mental health progress over the course of his treatment. For example, a summary of plaintiff's lethality, dated October 8, 2014, contains information from numerous dates. Tr. 555. Specific statements made by plaintiff regarding his suicidal ideations are recorded and presented in chronological fashion. *Id*. These statements are accompanied by assessments made by a treatment provider. Tr. 555 ("05/15/13 Denied any thoughts, plan, or intent to harm himself. 'It's not that bad' 'I hope it never gets that bad'"). Similar summaries exist for a variety of issues. Tr. 535 (homicidal ideations), 539 (substance abuse), 556 (medical). In at least one case, this Court has found that the presence of summaries rather than individual treatment notes in mental health treatment records is not necessarily an indication that the record as a whole is incomplete. *Aman v. Colvin*, 46 F. Supp. 3d 220 (W.D.N.Y. 2014) ("[physician] informed the Social Security Administration that the treatment history summary she had sent was all that she was able to produce . . . it appears that the Commissioner obtained all that there was to obtain, and plaintiff's contentions that more records existed, or that such records, if they did exist, would have supported her claim of disability, are wholly speculative"). Furthermore, the Second Circuit has held that an ALJ fulfilled his duty to develop the record where, although the ALJ did not contact the physician whose records were absent, claimant's counsel accepted responsibility to obtain

missing records and the ALJ left the record open to allow counsel to do so. *Jordan v. Comm'r of Soc. Sec.*, 142 Fed. Appx. 542, 543 (*unpublished opinion*) (2d Cir. Sept. 8, 2005). For these reasons, the ALJ has not failed in his duty to develop the record with respect to treatments notes from Horizon.

Finally, while it is true that cases suggest that a heightened duty to develop exists where a claimant has a mental impairment, these cases also typically involve *pro se* claimants. *See, e.g., Martin*, 2017 WL 370809, at *3 ("[p]laintiff contends that the ALJ failed to fully develop plaintiff's medical record, especially considering plaintiff's mental health diagnosis *and pro se status*") (emphasis added); *Corporan v. Comm'r of Soc. Sec.*, No. 12–CV–6704 (JPO), 2015 WL 321832, at *2–3 (S.D.N.Y. Jan. 23, 2015) ("where a claimant is *both* unrepresented by counsel *and* obviously handicapped by a mental impairment, an ALJ bears a doubly heighted [sic] duty to develop the record") (emphasis added). In this case, plaintiff was represented by counsel at the administrative level. When a claimant is represented by counsel at the administrative level, he is not impeded from presenting his own case in the same way a *pro se* claimant is, thus extra assistance from the ALJ is not necessary. *See Corporan*, 2015 WL 321832, at *3. Therefore, this Court is satisfied that the ALJ did not have a heightened duty in this case.

2. Dr. Nenno's Treatment Notes

Plaintiff also asserts that the absence of treatment notes from his orthopedic doctor, Dr. Nenno, constitutes a gap in the record. Indeed, the record contains numerous references to Dr. Nenno's treatment of plaintiff, *see supra* Part II(B)(2), but his treatment notes are wholly absent. Accordingly, this Court agrees with plaintiff's assertion.

*Rosa v. Callahan* is the controlling Second Circuit precedent in cases involving a duty to develop the record. In that case, references to physicians whose treatment notes were missing

appeared in the administrative hearing testimony and elsewhere in the record. *Rosa*, 168 F.3d at 80. For example, treatment notes from one of the claimant's physicians revealed that the claimant visited a physical therapist on a regular basis over a significant period of time. *Id*. However, the record contained no "reports or materials reflecting that course of treatment." *Id*. The Court held that if the ALJ pursued additional information from "any or all" of the claimant's absent treatment sources, it was "at least possible" that the record would have sustained a claim of disability. *Id*. Since the ALJ did not fully develop the factual record, the Court concluded he committed legal error and remanded the case. *Id.* at 80, 83.

This case presents a similar commission of legal error to that in *Rosa*. First, the hearing testimony and administrative record suggests a somewhat extensive treatment relationship between plaintiff and Dr. Nenno. In a "Function Report" form supplied by the Social Security Administration, plaintiff indicated that he receives treatment for his pain from "Buffalo Gen. ortopect [sic] doc Nenno." Tr. 186. He indicated in the same form that Dr. Nenno administered "special tests" for his pain. *Id*. Additionally, an exchange between the claimant and the ALJ in the hearing transcript indicates that the ALJ was aware of Dr. Nenno's involvement in plaintiff's care:

| ALJ: | The left hand. Who gave you that cane? |
|---|---|
| CLMT: | My orthopedic doctor. |
| ALJ: | Is that the one at Buffalo General? |
| CLMT: | Yes. |

Tr. 59. Given what plaintiff indicated in his function report form, Tr. 186, it is reasonable to conclude that plantiff and the ALJ were discussing Dr. Nenno in that exchange. Furthermore, references to Dr. Nenno are ubiquitous in treatment notes from plaintiff's primary care facility.

Tr. 410, 451, 455, 460 (plaintiff noted to be "follow[ing] up" with Dr. Nenno); Tr. 390 (plaintiff "scheduled for a steroid shot by Dr. Nenno"). Despite all of these references, the ALJ did not make any effort to retrieve records from Dr. Nenno, either directly or through plaintiff's attorney. Therefore, the ALJ was "left to base [his] conclusions on incomplete information that was necessarily 'conclusive of very little.'" *Rosa*, 168 F.3d at 80 (quoting *Wagner v. Sec'y of Health and Human Servs.*, 906 F.2d 856, 861(2d Cir. 1990)).

Defendant argues that the record is complete despite the absence of Dr. Nenno's treatment notes because plaintiff also received care for the conditions Dr. Nenno treated at his primary care facility, which is documented in the record. Dkt. No. 16-1, at 20–21. However, the record implies information may exist in Dr. Nenno's notes that would render plaintiff's claim of disability "at least possible," thus warranting remand. *Rosa*, 186 F.3d at 80. For example, plaintiff testified that Dr. Nenno gave him and taught him how to use his cane. Tr. 59. The ALJ specifically noted in his decision that there is "no indication that [plaintiff's cane] is a medical necessity" when determining plaintiff's residual functional capacity. Tr. 25. Given the information contained in plaintiff's hearing testimony and function report, Tr. 59, 186, one could reasonably believe that Dr. Nenno's treatment notes could have clarified whether plaintiff's cane was medically necessary. Dr. Nenno's treatment notes may also help explain why plaintiff needed muscle relaxants and contemplated surgery. *See supra* Part II(B)(2); Tr. 390, 410. Because the absence of Dr. Nenno's treatment notes created an "obvious gap" in the record, and the ALJ did not make a reasonable effort to obtain these missing records, the ALJ committed legal error and the case must be remanded for further administrative proceedings.

**IV.     Conclusion**

Because the ALJ did not adequately develop the administrative record, his finding that plaintiff was not disabled is procedurally defective. Accordingly, the Court GRANTS plaintiff's motion, Dkt. No. 12, IN PART to vacate the Commissioner's final determination and to remand for further administrative proceedings not inconsistent with this decision and order. The Court DENIES plaintiff's motion, without prejudice, to the extent that it seeks any other relief. The Court also DENIES the Commissioner's cross-motion. Dkt. No. 16. The Court takes no position as to whether plaintiff is disabled. Furthermore, because a procedural failure warrants remand, this Court declines to address any other issues plaintiff has raised.

The Clerk of the Court shall close this case.


SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　　　　／s Hugh B. Scott
　　　　　　　　　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: July 11, 2018